Appellant, Larry Samuels, was convicted in the Circuit Court of Hinds County for the crime of forgery. The lower court sentenced appellant to serve a term of fifteen years with the Mississippi Department of Corrections. Three years were suspended and the remaining twelve ordered to be served concurrently with two prior convictions. We affirm.
Appellant advances two assignments of error, namely:
1. The court erred in permitting defendant's witness, Douglas Earl Lucas, to be cross-examined concerning an oral confession and in permitting subsequent testimony of a police officer in regard thereto. The court also erred in permitting Lucas to be asked about prior felony convictions.
2. The court erred in failing to instruct the jury regarding the burden of proof necessary to convict appellant.
Appellant was indicted for the crime of forgery, the indictment charging that he,
 did wilfully, unlawfully, feloniously, fraudulently and falsely then and there utter and publish as true to one First National Bank, a banking corporation, a certain forged and counterfeit writing on paper an instrument in writing commonly known as and called and purporting to be a certain written and printed bank check and order for the payment of money, of the tenor, purport, effect and in words and figures as follows:
 [Check attached to indictment]
 He, the said Larry Samuels then and there well knowing the same to be false, forged and counterfeit, with the wilful and felonious intent, then and there, feloniously, wilfully, unlawfully and fraudulently to injure and defraud the said First National Bank, Dewy L. Smith, and some other person or persons to the Grand Jurors unknown.
The case presented by the state primarily consisted of evidence from two bank tellers, persons who had lost certain checks, and three police officers. The testimony of the officers was that they were assigned to conduct surveillance on a yellow 1973 Chevrolet Impala automobile supposedly owned by Douglas Earl Lucas. On the morning of December 19, 1977, two of the officers observed Lucas as he picked up appellant at his home in the car in question. Before leaving the scene, appellant and Lucas were observed removing the license plate from the rear of the car and placing it in the car's trunk. These two officers then followed the automobile, with Lucas driving and appellant riding on the passenger side of the front seat, to the Jackson Mall branch of the First National Bank. The officers stated they saw appellant and his companion cash a check. Subsequently, the car was then followed by the officers to the Five-Points branch of the Deposit Guaranty National Bank, where another check was cashed. While these two officers were continuing surveillance of the car, the third officer, upon communication by radio, secured the two checks. Finally, the officers then followed the car to appellant's home, where the two occupants secured the license plate and replaced it on the car. At this point, appellant and Lucas were then arrested.
At the police station it was found that appellant had money in the sum of $1,090 on his person and $340 was found on the person of Lucas. Also found under the front seat of the car was what was apparently a stolen or lost driver's license which was admittedly used for identification in cashing the checks.
Testifying on behalf of the state were the two parties whose names were forged on the two checks in question and their wives. They all testified that they lost blank checks on December 18, 1977; the two checks in question secured by the officers on December 19 were dated December 16. *Page 396 
Appellant's principal witness was Douglas Earl Lucas, who testified that he picked appellant up in the car at the Jaycee Park near where appellant lives, and that they then drove to an automobile repair shop and obtained an inspection sticker. Lucas then related that they went to the branch bank office at the Jackson Mall and that he, Lucas, cashed the forged check. He testified he had won the check in a "crap game" but could not identify the person from whom it was won. Also, he testified that this person gave him the necessary identification to cash the check, that is, the driver's license previously mentioned. The gist of Lucas' testimony was that all the check forging was done by him and appellant had nothing to do with it. On cross-examination Lucas first admitted prior convictions of armed robbery and two forgeries. He was then cross-examined about a prior statement he had given to a police officer which was vastly inconsistent with his testimony at the trial. Lucas denied making such a statement.
On rebuttal, the state offered the testimony of Officer K.W. Humphries, who testified that he secured a statement from Lucas on December 27, 1977; that Lucas at that time told him that on the morning of December 19 he received a telephone call from appellant to come to his house. According to Humphries, Lucas told him that appellant had the two checks in question already partially completed and that the action in cashing the forged checks was a joint venture.
Regarding appellant's first assignment of error, this Court has held in many cases that a witness may be asked on cross-examination whether or not he has prior convictions for the purpose of impeaching his testimony. Sims v. State,313 So.2d 388 (Miss. 1975); Witt v. State, 159 Miss. 478, 132 So. 338 (1931); Pickett v. State, 139 Miss. 529, 104 So. 358 (1925). There is no merit to this contention by appellant.
Appellant further contends that it was reversible error to permit Lucas to be cross-examined about the prior statement given Officer Humphries. Again, this obviously was for the purpose of impeaching the testimony of Lucas and from the foregoing brief statement of the testimony, it is apparent that the prior statement was completely inconsistent with his testimony at the trial and clearly there was no error in permitting impeachment of his trial testimony by the prior statement. Appellant made no request that the jury be instructed to limit its consideration of the prior statement to impeachment purposes.
Under appellant's second assignment of error, he contends that the state should have asked for and the court granted an instruction pertaining to the burden of proof in cases based on circumstantial evidence. In the first place, appellant did not ask for an instruction of this nature. Furthermore, it is clear from the above statement of the evidence that this evidence was more than circumstantial. In addition to the testimony of the officers as to their actual observations, after the two checks were cashed in the sum of $200 each, less than the total amount of the two checks was found on the person of Lucas and much more was found on the person of appellant. According to rebuttal testimony of the officers, no other money was found in the car.
A study of the instructions requested by both the state and appellant and given by the court clearly shows that the jury was fully and properly instructed in the case and there was ample evidence to find the appellant guilty as charged. Neither of the assignments of error has merit. It therefore follows that the cause should be and it is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and COFER, JJ., concur. *Page 397